IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 | ) | MDL No. 2591 |
| CORN LITIGATION | ) | |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates To: | ) | |
| | ) | |
| *Cargill Inc., et al. v. Syngenta Seeds, Inc.,* | ) | |
| No. 15-2018-JWL | ) | |
| | ) | |
| *Archer Daniels Midland Co. v. Syngenta* | ) | |
| *Corp., et al.*, No. 15-2240-JWL | ) | |
| | ) | |
| *Fornea-5, LLC v. Syngenta AG, et al.,* | ) | |
| No. 15-2017-JWL | ) | |
| | ) | |
| *W. Edgar Wilman 2000 Trust, et al. v.* | ) | |
| *Syngenta Corp., et al.*, No. 15-2012-JWL | ) | |
| | ) | |
| _____ | ) | |

## **MEMORANDUM AND ORDER**

In this multi-district litigation ("MDL"), various plaintiffs assert claims against various entities related to Swiss company Syngenta AG (collectively "Syngenta"). Prior to their transfer to this Court, many of the cases were removed to federal court by Syngenta from the state courts in which they were originally filed. Although in some cases (for instance, when the parties were diverse or when federal claims were asserted) it cited additional bases for federal jurisdiction, in each case Syngenta relied on the federal common law of foreign relations in asserting that federal question jurisdiction arose under 28 U.S.C. § 1331. In four such cases (noted in the caption above), plaintiffs have moved for remand back to state court (Doc. # 283), based on their argument that

the federal common law of foreign relations does not give rise to federal question jurisdiction under Section 1331 in these cases.

As an initial matter, in two of these four cases, Case Nos. 15-2012-JWL and 15-2017-JWL, Syngenta also asserted federal jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). In its Scheduling Order No. 1 (Doc. # 123), the Court ordered that any remand motion addressing any such basis for removal be filed by March 12, 2015, but plaintiffs in those two cases have not filed any motion addressing the removal of their cases under CAFA. Accordingly, because an independent basis for federal jurisdiction exists in those two cases, the Court **denies** the motion for remand as applied to Case Nos. 15-2012-JWL and 15-2017-JWL.

In the remaining two cases, for the reasons set forth below, the Court concludes that the federal common law of foreign relations does not give rise to federal question jurisdiction under Section 1331. Accordingly, in Case Nos. 15-2018-JWL and 15-2240-JWL, the Court **grants** the motion for remand to state court.

## I.    **Background**

In Case No. 15-2018-JWL, plaintiffs Cargill, Inc. and Cargill International SA (collectively "Cargill") originally filed their action in Louisiana state court, asserting only state-law claims of negligence; knowing, reckless, or willful misconduct; unfair trade practice; tortious interference with business relations; and civil conversion. In Case No. 15-2240-JWL, plaintiff Archer Midland Daniels Co. ("ADM") originally filed

its action in Louisiana state court, asserting only state-law claims of negligence, unfair trade practice, and civil conversion.  In their state court petitions, Cargill and ADM (collectively "plaintiffs")—like the other plaintiffs in this MDL—generally allege that Syngenta wrongfully failed to take proper measures in introducing certain corn seeds into the market, and that plaintiffs suffered damages when exports of the corn to China were rejected.  In asserting federal jurisdiction, Syngenta argues that at least some of plaintiffs' tort claims arise under federal law because they require a determination of the validity or lawfulness of the acts of the government of China in refusing to approve Syngenta's corn and in rejecting imports of the corn to that country, and that such issue presents a question of federal law under the federal common law of foreign relations.[1]

## II.   **Analysis**

### A.   *Standards for Federal Jurisdiction*

"Federal courts are courts of limited jurisdiction."  *See Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Removal statutes are to be narrowly construed.  *See Pritchett v. Office*

---

[1]Syngenta has not asserted that diversity jurisdiction exists in these two cases. According to the petitions, Cargill, ADM, and various Syngenta entities named as defendants in these cases are Delaware corporations.  In asserting that jurisdiction is proper in Louisiana, Cargill and ADM have alleged that they exported shipments of the corn to China from facilities in that state.

*Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005).[2]  "[T]here is a presumption against removal jurisdiction," *see Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), and "all doubts are to be resolved against removal," *see Fajen v. Foundation Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982).  The removing defendant bears the burden of establishing federal jurisdiction.  *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).

Under Section 1331, federal district courts have jurisdiction over civil actions "arising under" federal law.  *See* 28 U.S.C. § 1331.  "Most directly, a case arises under federal law when federal law creates the cause of action asserted."  *See Gunn*, 133 S. Ct. at 1064.  In these two cases, plaintiffs have asserted purely state-law claims, and thus have not asserted any causes of action created by federal law.  The "creation" test for federal question jurisdiction "admits of only extremely rare exceptions," and the Supreme Court has set forth an additional test for determining the category of cases—described by that Court as a "special and small category" and a "slim category"—in which federal "arising under" jurisdiction over state-law-created claims still lies.  *See id.* at 1064-65.  The Supreme Court stated the test in *Gunn* as follows: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution without

---

[2]With respect to questions of federal law, this transferee court applies the law of the circuit in which it sits. *See In re Urethane Antitrust Litig.*, 2013 WL 65988, at *1 (D. Kan. Jan. 4, 2013) (Lungstrum, J.).

disrupting the federal-state balance approved by Congress." *See id.* at 1065 (citing

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg.*, 545 U.S. 308, 313-14

(2005)).  The Tenth Circuit has elaborated on the *Gunn* test by identifying the following

principles that mark the "narrow boundaries" of this basis for federal jurisdiction:

> [T]he recognition of substantial question jurisdiction does not disturb the
> long-settled understanding that the mere presence of a federal issue in a
> state cause of action does not automatically confer federal-question
> jurisdiction.  Nor can federal question jurisdiction depend solely on a
> federal defense, even if the defense is anticipated in the plaintiff's
> complaint, and even if both parties concede that the federal defense is the
> only question truly at issue.  Finally, if a claim does not present a nearly
> pure issue of law, one that could be settled once and for all and thereafter
> would govern numerous cases, but rather is fact-bound and situation-
> specific, then federal question jurisdiction will generally be inappropriate.

*See Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947-

48 (10th Cir. 2014) (internal quotations and citations omitted).

Moreover, as the *Becker* court noted, *see id.*, this inquiry by the Court is

constricted by the well-pleaded complaint rule.  "When determining whether a claim

arises under federal law, we examine the well pleaded allegations of the complaint and

ignore potential defenses." *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013)

(internal quotations omitted) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6

(2003)).

### B.    *Necessarily Raised*

In asserting federal jurisdiction under the *Gunn* test, Syngenta argues that

plaintiffs' petitions necessarily raise the issue whether China's acts in rejecting the corn

were lawful or valid under that nation's own law and under international law. Specifically, Syngenta argues that plaintiffs, under the applicable state law,[3] must show that the harm that they suffered from China's rejection of the corn was foreseeable in order to prove that Syngenta owed a legal duty to protect against the harm and in order to prove that China's rejection was not an intervening cause that would sever the causal chain running from Syngenta's acts. Syngenta argues that the issue of the validity of China's acts involves a question of federal law under the federal common law of foreign relations.

The parties agree that this doctrine of the federal common law of foreign relations has its roots in language by the Supreme Court in *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398 (1964). *See, e.g.*, *A.A.Z.A. v. Doe Run Resources Corp.*, 2008 WL 748328, at *2 (E.D. Mo. Mar. 18, 2008); *In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d 31, 35 (D.D.C. 2000). In *Sabbatino*, the Court considered and applied the act of state doctrine, which provides that courts of one nation should not judge the acts of the government of another nation performed within its own territory. *See Sabbatino*, 376 U.S. at 416; *see also W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp.*, 493 U.S. 400, 409 (1990) (act of state doctrine requires that "the acts of foreign

---

[3]The parties appear to agree at this stage that Louisiana law would govern the claims asserted by Cargill and ADM, whose petitions specifically assert claims under that state's civil code. Syngenta argues that Texas law could also apply to any shipments by those plaintiffs from that state, but as plaintiffs' note, they have not alleged such shipments in their petitions. Accordingly, the Court will assume at this stage that Louisiana law governs plaintiffs' claims.

sovereigns taken within their own jurisdictions shall be deemed valid"). *Sabbatino* did not involve a question of jurisdiction; rather, the Court ruled that, for *Erie* purposes, the scope of the act of state doctrine presents a question of federal law. *See Sabbatino*, 376 U.S. at 425-27. The following year after *Sabbatino*, in *Republic of Iraq v. First National City Bank*, 353 F.3d 47 (2d Cir. 1965)—another case not involving the issue of federal jurisdiction—the Second Circuit extended the ruling in *Sabbatino* to apply also to the consideration of acts of a foreign government taken within the United States, which would fall outside the scope of the act of state doctrine. *See id.* at 50-51. The Second Circuit stated:

> Like the traditional application of the act of state doctrine to preclude judgment with respect to another government's acts concerning property within its own territory at the time, the exercise of discretion whether or not to respect a foreign act of state affecting property in the United States is closely tied to our foreign affairs, with consequent need for nationwide uniformity. It is fundamental to our constitutional scheme that in dealing with other nations the country must speak with a unified voice.

*See id.* at 50 (citations omitted).

In invoking the federal common law of foreign relations in this jurisdictional context, Syngenta cites *Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986). In that case, the Second Circuit concluded that, under the principles stated in *Sabbatino* and *Republic of Iraq*, federal jurisdiction arose over state-law claims in its case, which raised as a necessary element the question whether to honor a foreign government's directives concerning property in the United States. *See id.* at 353-54. Of course, *Marcos* is easily distinguished from the present cases, as that case involved claims

asserted by the foreign government itself based on its own sovereign acts, and thus the outcome in *Marcos* is not particularly helpful in this case.

The Ninth Circuit has also considered assertions of federal jurisdiction based on the federal common law of foreign relations. In *Patrickson v. Dole Food Co.*, 251 F.3d 795 (9th Cir. 2001), the court began by noting that "if a plaintiff's claim arises under the federal common law recognized by *Sabbatino*, the federal courts will have jurisdiction under 28 U.S.C. § 1331." *See id.* at 800 (footnote omitted). The court noted in that case, however, that the case as framed by the plaintiffs did not require the evaluation of any act of state or apply any principle of international law, but that the common law of foreign relations would become an issue only if raised as a defense. *See id.* The court then held that *Sabbatino* did not create any exception to the well-pleaded complaint rule, and it rejected the argument (based on cases from the Fifth and Eleventh Circuits) that federal jurisdiction arises in any case that involves an issue of foreign relations or in which a foreign government has taken an interest in the outcome. *See id.* at 801-03.[4] In so ruling, the Ninth Circuit noted specifically that Congress has not extended federal question jurisdiction to all suits involving foreign relations, which silence outside

---

[4]The Fifth and Eleventh Circuits have indicated more broadly that federal jurisdiction may arise if the plaintiff's complaint raises substantial issues of federal common law by implicating important federal policy concerns, including another nation's vital economic interests. *See Torres v. Southern Peru Copper Corp.*, 113 F.3d 540, 543 (5th Cir. 1997); *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1377 (11th Cir. 1998) (citing and distinguishing *Torres*). That broad standard has been criticized by other courts, however, and Syngenta has expressly stated that it does rely on the *Torres* standard in these cases. Accordingly, the Court will not apply that standard.

Congress's express grants of federal jurisdiction provides an endorsement of the well-pleaded complaint rule in this context. *See id.* at 803.

The Ninth Circuit reaffirmed that holding in *Provincial Government of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083 (9th Cir. 2009). In *Placer Dome*, the district court had found jurisdiction, based on allegations in the complaint concerning activities of the Philippine government's activities that had contributed to the environmental harm suffered by the plaintiff. *See id.* at 1090. Nevertheless, the Ninth Circuit held that because the supposed acts of state were not essential to the plaintiff's claims, the federal issue did not arise on the face of the complaint, but rather arose only defensively, and jurisdiction could not exist under the well-pleaded complaint rule as applied to the *Gunn* requirements for jurisdiction over state-law claims. *See id.* at 1090-93.

Syngenta has not argued here, nor provided any authority to suggest, that invocation of the federal common law of foreign relations somehow trumps or circumvents the requirements of the *Gunn* test and the applicability of the well-pleaded complaint rule. Moreover, Syngenta has not been able to point the Court to any case involving private parties in which a court exercised federal question jurisdiction over state-law claims based on the federal common law of foreign relations, which federal issue arose solely because of a foreign government's act within the causal chain leading to the plaintiff's harm.

As noted above, the scope of federal jurisdiction under the *Gunn* requirements is

9

very narrow, and within that category of cases jurisdiction has been found to arise from the federal common law of foreign relations only rarely.  *See Abrahamsen v. ConocoPhillips, Co.*, 503 F. App'x 157, 160 (3d Cir. 2012) ("Federal-common-law-of-foreign-relations jurisdiction is rarely recognized by federal courts, especially for private disputes between citizens and entities."); *O'Neill v. St. Jude Med., Inc.*, 2004 WL 1765335, at *5 (D. Minn. Aug. 5, 2004) ("The federal common law of foreign relations will support jurisdiction only in a narrow range of cases.").[5]  In any event, the Court need not consider further the scope of the federal common law of foreign relations because this motion is properly resolved by application of the *Gunn* requirements for jurisdiction.[6]

As noted above, Syngenta argues that because plaintiffs must establish a duty and proximate cause to prove their tort claims, they must show that their harm was foreseeable.  Plaintiffs do not dispute that they will need to show foreseeability in these cases.  Syngenta further argues that that required element of plaintiffs' claims necessitates a determination concerning the validity or lawfulness of China's acts in

---

[5]In support of its argument under the "necessarily raised" requirement, Syngenta has cited only two such cases, both of which are easily distinguished from the present cases:  *Marcos*, from the Second Circuit (distinguished above); and *Grynberg Production Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338 (E.D. Tex. 1993), which involved a claim of right to title to property in a foreign nation over the rights of that sovereign.  *See id.* at 1358-60.

[6]At oral argument, plaintiffs' counsel conceded that, if in fact the validity of China actions is necessarily raised by plaintiffs' claims under the well-pleaded complaint rule, that issue would likely be governed by federal law.

refusing to approve Syngenta's corn and in rejecting plaintiffs' shipments of corn to that country.  Plaintiffs do dispute that proof of their case requires any determination of the validity of China's acts.

As stated in its response brief, Syngenta argues as follows: "Addressing foreseeability, in turn, will require the court presiding over this case to decide whether or not China's actions were *lawful* because, under applicable state law, different presumptions and different requirements of proof with respect to foreseeability apply depending on whether or not a third party's actions are lawful."  Syngenta has not been able adequately to support that statement, however, by reference to the applicable law. Syngenta notes that as a general matter no duty arises to prevent a criminal act by a third party, and that such an act serves as an intervening cause that breaks the causal chain from the tortfeasor's acts; but Syngenta concedes that there may be duty and proximate causation (and thus liability) if the criminal act is nevertheless foreseeable, as Louisiana cases cited by Syngenta confirm.  *See Posecai v. Wal-Mart Stores, Inc.*, 752 So. 2d 762, 766 (La. 1999) (business owners "have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable"); *Willie v. American Cas. Co.*, 547 So. 2d 1075, 1085-86 (La. Ct. App. 1989) (approving of rule that "where the criminal act is foreseeable, the failure to take reasonable steps to prevent such act is a proximate cause of its result").

Plaintiffs thus argue that, because the ultimate test is foreseeability, a determination of the separate question of the lawfulness of the third party's act is not

necessary.  In attempting to link foreseeability to a lawfulness determination, Syngenta argues in its brief that "[g]iven the presumption that unlawful acts are usually *not* foreseeable, plaintiffs may seek to establish the elements of their claims by asserting that China's actions were *foreseeable* because they were *lawful*."  (Emphasis in original.) Of course, the fact that plaintiffs "may" choose to pursue that argument does not mean that the issue of lawfulness is *necessarily* raised.  Syngenta attempts to give plaintiffs a Hobson's choice: plaintiffs can argue that China's acts were foreseeable because they were lawful (thereby putting the lawfulness of the acts at issue); or plaintiffs can assume that the acts were unlawful, and  they can then attempt to show that the acts were nevertheless foreseeable by pointing to prior similar unlawful acts by China (thereby putting the lawfulness of the prior acts at issue).[7]  Syngenta has not provided any authority, however, suggesting that the court or jury must determine as a threshold matter whether the third party's act was in fact criminal.  Syngenta suggests that different standards apply depending on whether the third party's act was criminal, but it has not identified those different standards, other than to note the general rule that a third-party criminal act usually is not the subject of a legal duty and usually serves as an intervening cause.  The ultimate inquiry, however, remains whether the third party's act was foreseeable, whether or not that act was criminal, and Syngenta has not provided any

---

[7]Syngenta cites *Posecai*, in which the Louisiana Supreme Court noted that factors to be considered in determining the foreseeability of criminal acts by third parties include the frequency and similarity of prior incidents of crime.  *See Posecai*, 752 So. 2d at 768.

authority to suggest that a plaintiff cannot simply prove that the third party's act was foreseeable without attempting to answer the question of the criminality of the act. Thus, Syngenta has not shown that Louisiana law requires a threshold determination of the lawfulness of an intervening party's act.

At oral argument on this motion, Syngenta appeared to change the focus of its analogy from criminal acts by an intervening party to intentional acts, and for the first time it cited Restatement (Second) of Torts § 442B and two of that section's illustrations. Section 442B provides as follows:

> Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.

*See id.* Syngenta notes the different outcomes in Illustration 5, in which a negligent intervening act (negligently knocking a person into a sidewalk excavation) does not preclude liability, and Illustration 7, in which an intentional act (deliberately kicking the person into the excavation) does preclude liability. *See id.* illus. 5, 7. Both Section 442B and the relevant comment, however, provide that a negligent party may still be liable if the third party's intentional act is forseeable and thus falls within the scope of the risk created by the original negligence. *See id.* & cmt. c. Thus, if the particular third-party act is foreseeable, there can be liability, whether or not the intervening act was intentional or negligent. Syngenta insisted at oral argument that a lawfulness

13

determination must be made in order to sort the case into a particular box or category that in turn determines the proof needed by plaintiffs. Restatement Section 442B does not provide that an initial determination of intent is required, however, and there is no reason why plaintiffs could not simply prove that China's acts in refusing to approve the corn and in rejecting shipments were foreseeable, based on particular facts, without choosing between the intentional/non-intentional—or in our cases, the lawful/unlawful—boxes.

In addition, Syngenta has not cited any authority suggesting that the same analysis relating to intentional or criminal acts by intervening third parties would also apply in the case of a foreign sovereign's act that may or may not violate its own law or international law, and the Court remains unconvinced that such analogies are entirely apt. There is no reason why plaintiffs here could not prove that it was foreseeable that China might reject shipments of corn that Syngenta introduced to the market absent Chinese approval without addressing the lawfulness of that act by China. As they argued in their briefs, plaintiffs have alleged facts to show not only that China's acts were foreseeable, but that China's lack of approval and ultimate rejection of shipments were actually foreseen, in the sense that Syngenta was warned specifically about the possibility of such acts by China.[8] Such a showing of foreseeability would not require

---

[8]Syngenta responded to this point at oral argument by stating that the test of foreseeability does not turn on the defendant's actual anticipation of the harm, but rather depends on the view of a reasonable person in the defendant's position. Even if that is
(continued...)

a determination in the first instance of the lawfulness of China's acts.

At oral argument, Syngenta also argued for the first time that the validity of China's acts were implicated not only by plaintiff's burden to show foreseeability in order to establish a legal duty and proximate cause, but also by plaintiff's burden to show direct causation, which requires proof that China's rejection of the shipments was actually caused by the corn itself and not by some other motivation (for instance, in order to compensate for a falling corn market within China). Syngenta argued that the jury must therefore decide why China rejected the corn, and if its stated reasons were pretextual, then China violated international treaties by that rejection. That argument proves circular, however; the fact that a finding of pretext means that China acted unlawfully does not mean that the a jury would be required to determine whether China acted unlawfully in order to determine whether it acted pretextually. Thus, any determination of lawfulness or unlawfulness would be only incidental and not necessary to plaintiffs' proof of their claims. Moreover, plaintiffs can satisfy their prima facie

---

[8](...continued)
true, however, plaintiff would be free to show that a reasonable person would foresee this harm from the warnings given to Syngenta, without regard for the lawfulness or unlawfulness of China's acts.

Syngenta has also pointed out that a plaintiff may not circumvent the well-pleaded complaint rule by omitting from its complaint federal issues essential to its claim. *See Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1234 (10th Cir. 2006). In this case, however, plaintiffs have conceded that the issue of foreseeability is essential to their claims, and they have at least pleaded facts that make a claim of foreseeability plausible without reference to the lawfulness of China's acts. Of course, plaintiffs are not required to plead every fact that may ultimately be used to support their claims.

burden to show direct causation by reference to China's stated reasons for rejecting the shipments of corn; thus, it would be more accurate to describe any issue of pretext as arising as a defense, which issue therefore cannot support federal jurisdiction under the well-pleaded complaint rule.[9]

In summary, then, the Court must conclude that plaintiffs' state-law tort claims do not necessarily raise the issue of the validity or lawfulness of China's acts, in the sense that plaintiffs are not required to address that issue in order to prove their claims. Syngenta may itself seek to argue in this litigation that the unlawful nature of China's acts supports the position that those acts were not foreseeable, but the federal issue in that instance would arise only by means of a defense, and the issue thus may not support federal-question jurisdiction.[10]   Because this prong of the narrow *Gunn* test for

---

[9]At oral argument and in materials submitted at that argument, Syngenta contended that the well-pleaded complaint rule prohibits only the raising of federal issues by affirmative defenses and not by defenses generally.  That rule is ordinarily described, however, by reference to defenses generally, *see, e.g.*, *Franchise Tax Bd. of State of Calif. v. Construction Laborers Vacation Trust for So. Calif.*, 463 U.S. 1, 10 (1983), and Syngenta has not cited any authority to support the argument that a federal issue arising only by means of a factual defense may support federal-question jurisdiction.  Moreover, in the Ninth Circuit cases rejecting federal jurisdiction based on the federal common law of foreign relations, the courts noted that any such federal issue arose only as a matter of defense, and the Court does not agree with Syngenta that the courts in those cases were referring specifically and only to preemption or any other affirmative defense.  *See Placer Dome*, 582 F.3d at 1091-92; *Patrickson*, 251 F.3d at 800.

[10]Resolution of this motion does not require the Court to address the merits of Syngenta's arguments, asserted in its brief and in the materials submitted at oral argument, that China did in fact act unlawfully.  Nor must the Court determine at this

(continued...)

jurisdiction is not satisfied in these cases, the Court must conclude that federal jurisdiction is lacking here, and remand is therefore appropriate.[11]

C.    *Substantial*

The Court also concludes that these cases fail to satisfy the Supreme Court's requirement that the federal issue be substantial.  In *Gunn*, the Supreme Court described the requirement of a substantial issue as follows:

> [I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim "necessarily raise[s]" a disputed issue . . . .  The substantiality inquiry. . . looks instead to the importance of the issue to the federal system as a whole.

*See Gunn*, 133 S. Ct. 1059.  In *Gunn*, in concluding that the federal issue in that case (an issue of patent law) was not substantial, the Supreme Court noted that the state-law claim (for legal malpractice) was backward-looking, in the sense that it would not change the real-world result of the disputed issue (the prior patent litigation).  *See id.* at 1066-67. In describing the principles governing "substantial question" jurisdiction under *Gunn*, the Tenth Circuit has emphasized that "if a claim does not present a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous

---

[10](...continued)
stage whether China's acts must be deemed valid under the act of state doctrine.

[11]Syngenta also makes various policy arguments about the need for uniformity of ruling in the federal forum with respect to such questions of the validity of a foreign sovereign's acts.  In light of the Court's conclusion that the *Gunn* test is not satisfied here, however, the Court need not address such arguments except to underscore that Congress has not seen fit to provide for federal jurisdiction in all cases involving issues implicating foreign relations.

cases, but rather is fact-bound and situation-specific, then federal question jurisdiction will generally be inappropriate."  *See Becker*, 770 F.3d at 947-48 (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006)).

Syngenta argues that the lawfulness of China's acts presents a substantial question in light of the continuing negotiations between the United States and China over approval of one corn variety at issue here.  Nevertheless, the Court notes that neither government has attempted to insert itself into these cases or expressed any concern about the litigation.  Syngenta insists that such a lack of interest from the governments is not dispositive, but it is nevertheless significant and supports the conclusion that the issue is not substantial here.  *See Gilmore v. Weatherford*, 694 F.3d 1160, 1174 (10th Cir. 2012) (involvement of the federal government in the dispute was "a key factor" in determining whether a federal issue was substantial).  Moreover, like the issue in *Gunn* that was determined not to be sufficiently substantial, any ruling about the validity of China's past acts is necessarily backward-looking and without real-world effect, in the sense that China's acts would not be undone or invalidated in any way.  Finally, any consideration of the lawfulness of China's acts would be fact-specific, and the Tenth Circuit has made clear that such an issue does not present a substantial issue for purposes of federal question jurisdiction.[12]

---

[12]Syngenta cites *Grynberg Production Corp. v. British Gas, p.l.c.*, 817 F. Supp. 1338 (E.D. Tex. 1993), in which the court stated that questions of international relations "would seem to nearly always involve federal issues of such a 'substantial' nature as to

(continued...)

Accordingly, because the Court concludes that the federal issue in these cases is not substantial, there is no basis for federal question jurisdiction here, and these cases must be remanded for that reason as well.

IT IS THEREFORE ORDERED BY THE COURT THAT in Case Nos. 15-2012-JWL and 15-2017-JWL, plaintiffs' motion for remand (Doc. # 283) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT in Case Nos. 15-2018-JWL and 15-2240-JWL, plaintiffs' motion to remand (Doc. # 283) is **granted**, and those cases shall be remanded to the state courts in which they were originally filed. The Clerk of Court is ordered to take the necessary steps to effect that remand.

IT IS SO ORDERED.

Dated this 5th day of May, 2015, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[12](...continued) warrant the exercise of jurisdiction." *See id.* at 1356. That court supported its statement in part by noting that Congress had expressly provided for federal jurisdiction in cases against foreign sovereigns. *See id.* As noted above, however, this Court finds Congress's silence regarding jurisdiction over all cases involving issues implicating foreign relations to be more significant. *See Patrickson*, 251 F.3d at 803 (giving weight to congressional silence outside of specific grants of jurisdiction, including for suits against sovereigns). Moreover, the court in *Grynberg* did not consider the standards for substantiality cited and applied here. In light of those standards, the Court does not agree that questions involving foreign relations are presumptively substantial.

19